UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------x

JOEL VELEZ,                                    :

                    Petitioner,               :        **REPORT AND
                                                        RECOMMENDATION
          -against-                           :        TO THE HONORABLE
                                                        <u>WILLIAM H. PAULEY</u>**

BRIAN FISCHER,                                :

                    Respondent.               :        04 Civ. 4357 (WHP)(FM)

---------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.      <u>Introduction</u>

        Petitioner Joel Velez ("Velez") brings this habeas corpus proceeding,

pursuant to 28 U.S.C. § 2254 ("Section 2254"), to challenge his conviction on charges of

Assault in the First Degree and Robbery in the Second Degree following a jury trial in

Supreme Court, Bronx County.  On May 2, 2000, Justice Barbara F. Newman, before

whom the case was tried, sentenced Velez to consecutive prison terms of ten years and

five years, respectively, on these counts.

        The case against Velez arose out of an incident in which Velez stabbed one

man repeatedly and then commandeered a second man's vehicle in the course of his flight

from the scene.  In his habeas petition ("Petition"), Velez claims that:  (a) the evidence at

trial was legally insufficient to sustain the verdict; (b) his conviction was against the

weight of the evidence; (c) his sentence was unduly harsh and excessive; (d) he should

have been sentenced to concurrent terms of imprisonment; and (e) the trial court's

instructions regarding his justification defense were improper.  (See Docket No. 2).  For

the reasons that follow, the Petition should be denied.  Additionally, pursuant to 28

U.S.C. § 2253(c)(2), Velez should be denied a certificate of appealability because he has

failed to make the necessary showing of the denial of a constitutional right.

II.     Background

    A.     Trial

        1.     People's Case

The People's proof at trial would have permitted a reasonable juror to find

as follows:

Velez and Charles Terry ("Terry"), whom Velez stabbed, were involved in

an escalating series of confrontations during the summer of 2000.  Several years earlier,

they had become friends after Terry moved into Velez's apartment building, located at

3340 Bailey Avenue in the Bronx.  (T. 374-75).[1]  Although Terry later moved to

Pennsylvania, he often returned to 3340 Bailey Avenue, where his two-year old daughter

lived with her mother.  (Id. at 372, 378, 384, 390, 398).

---

[1]     "T." refers to the trial transcript.  "S." refers to the sentencing minutes.  "Ex."
refers to the exhibits annexed to the affidavit of Assistant District Attorney T. Charles Won,
sworn to on October 20, 2004.

The stabbing occurred on February 23, 2001. On that date, Terry and his brother, Scott Diaz, brought Terry's infant daughter to her mother's apartment. (Id. at 398). As the two men were leaving the vicinity, Diaz double parked in front of 3340 Bailey Avenue so that Terry could buy some cigarettes at a nearby store. (Id. at 399-400). Terry encountered Velez near the entrance to the store, but the two men agreed to let "bygones be bygones." (Id. at 400-01, 486). The tenor of their conversation changed, however, as the discussion continued. (Id. at 401, 486). Diaz then stepped out of the car and started walking toward them. (Id. at 554-55).

Within a matter of moments, Velez brandished a knife, and he and Terry began "swinging" punches at each other. (Id. at 402-03, 467-68, 556). Seeing the knife, Terry turned and started to run away, but Velez gave chase. (Id. at 404, 418, 556, 628). As Terry was running, he slipped and fell in the middle of Albany Crescent, a nearby street. (Id. at 418-19, 627). After Terry rolled onto his back, Velez stabbed him in both his arms and his chest. (Id. at 419, 424-25, 438-40, 492, 503-08, 558-59). Terry was unarmed throughout this altercation. (Id. at 443).

Velez then fled down Albany Crescent with Diaz pursuing him in Terry's car. (Id. at 430-31, 557, 573, 625-26). During his attempt to escape, Velez approached a double-parked van. (Id. at 573, 576). Velez put his knife to the throat of Apostoles Danias ("Danias"), who was seated in the driver's seat of the van, and stated "angrily," "Get the fuck out, motherfucker." (Id. at 724, 727-28). Danias complied by rolling over

3

to the passenger side of the van and exiting.  (Id. at 579, 729).  Velez then drove the van

down Albany Crescent with Diaz still in pursuit.[2]  (Id. at 580, 731).

At a red light on West 234th Street, Velez moved into the opposing lane of

traffic, but was blocked from proceeding further by an oncoming car.  (Id. at 587, 749).

Velez then got out of the van.  (Id. at 590, 598-99, 753-54).  Diaz, who was still following

Velez, jumped out of Terry's car and banged on the window of a police patrol car stopped

at the light.  After Diaz screamed, "He stabbed my brother," and "He has a knife," two

police officers exited the patrol car and ordered Velez to put his hands on the side of the

van.  (Id. at 588-91, 600-01).  Velez, who was bleeding, explained to the officers, "I had a

beef with this guy.  He cut me.  I was protecting myself, so I cut him."  (Id. at 760-61,

781).  Velez stated further that he had left the knife used in the stabbing at the location

where it had occurred.  (Id. at 761).  The officers then placed Velez under arrest and took

him to a hospital.  (Id. at 761-62, 782-83).  Later the same day, Police Officer Ann Barry

found Velez's knife on a curb on West 234th Street between Broadway and Kingsbridge

Avenue.  (Id. at 674-76).

After telling the police his version of the events at the arrest scene, Diaz

asked if he could return to his wounded brother's side.  (Id. at 603, 766).  The officers

---

[2]      The jury acquitted Velez of Robbery in the First Degree, N.Y. Penal Law
§ 160.15(3) (McKinney 1999), which requires the use or threatened use of a "dangerous
instrument," in connection with the theft of the van, but found him guilty of Robbery in the
Second Degree, N.Y. Penal Law § 160.10(3), which merely requires that the property taken be a
"motor vehicle."

permitted him to do so.  (Id. at 603).  By the time Diaz got to Albany Crescent, Terry was

being treated by a doctor, Despina Trigenis, who had witnessed the stabbing.  (Id. at 432-

33, 434, 513-14).  Diaz placed his brother in his car, intending to take him to the hospital,

but, before he could drive away, the police arrived and ordered him out of the car.  (Id. at

435, 515, 518, 604-06, 697).  Diaz complied, but Terry was injured too seriously to get

out of the car on his own.  (Id. at 607-08, 697, 698).  The officers searched Diaz and

Terry's car, but did not recover any weapons.  (Id. at 608, 699, 703).  Five to ten minutes

later, an ambulance arrived and took Terry to the hospital.  (Id. at 530, 704).

Terry was still bleeding when he was seen in the emergency room.  (Id. at

815-16).  He had a ten-inch wound "down to the muscle" from his shoulder to his chest.

(Id. at 817).  Terry also had sustained a three-inch wound that exposed the bone on his

left wrist, and a three-inch wound on his right wrist.  (Id. at 820, 823-24).  In addition, he

complained of numbness in his left fingers.  (Id. at 820-21).  Terry's wounds were

irrigated, cleaned, and stapled.  (Id. at 819, 823, 824).  The following day, he was released

from the hospital with a recommendation that he follow up at a plastic surgery clinic.  (Id.

at 824).

Terry could not lift his left arm for a "long time."  (Id. at 441).  He also

suffered nerve damage to his left pinky and ring finger.  (Id.).  Terry was unable to work

for four months because of the stab wounds.  (Id. at 442).  He also is no longer able to

pursue his former hobby of recreational boxing.  (Id. at 445).

5

Both Terry and Diaz denied that Terry had yelled out to Diaz for help, or instructed Diaz to get a gun.  (Id. at 470, 491, 631).  Consistent with this testimony, police officers Kenneth Clark and Thomas Beck testified that when they spoke to Velez and Diaz after the chase, Velez did not mention any gun that Diaz allegedly had.  (Id. at 762, 781, 783).  They both testified further that they did not hear any police "radio-runs" regarding a gun.  (Id. at 766, 784).

2.      Defense Case

Velez was the sole defense witness.  He testified that on February 19, 2001, four days before the stabbing, Velez and his cousin Hector were in the vicinity of 3340 Baily Avenue when Terry ran up to them and started fighting with Hector.  (Id. at 839, 848).  According to Velez, he tried to separate them, but Terry pulled out "a blade."  (Id. at 839, 848).  Eventually, Terry's mother intervened and was able to stop the fight.  (Id. at 839).  Velez explained to Terry's grandmother, who was also at the scene, that every time there was a confrontation, "I'm not the one looking for the problem, he's the one that always . . . [is] the aggressor, com[ing] to me with a problem."  (Id. at 840).

Velez testified further that he was standing in front of a store on February 23, 2001, when Terry and Diaz drove up, exited their car, and approached Velez.  (Id. at 840).  Velez claimed that Terry pushed him against the wall and started poking him in the head, stating, "I should just kill you right here.  I should just jump you the way you tried to do to me."  (Id. at 840-41).  Egging Terry on, Diaz then said, "Yo, we ain't come here

6

to talk.  Let's do what we got to do and get out of here."  (Id.).  At that point, Terry

started punching Velez and pulled Velez's coat over his head.  (Id.).  As the melee moved

to the street, Terry pulled out a knife and stabbed Velez.  (Id.).  Velez, in turn, grabbed

Terry and the two men fell to the ground.  (Id.).  At that point, Terry dropped his knife but

began screaming to Diaz, "Get the gun, get the gun."  (Id. at 841-42).

        While Velez and Terry were struggling, Velez was able to pick up the knife.

(Id. at 842).  Velez then began stabbing Terry as Terry continued shouting, "Get the gun,

get the gun."  (Id.).  When Terry stopped shouting, "[Velez] felt free and . . . ran."  (Id.).

As Velez explained, he previously had stabbed Terry because "there was two of them

against me, and I got cut."  (Id. at 843).

        As he was fleeing the scene, Velez approached a double-parked van and

told the driver, "[C]all the police, I need help, I just got stabbed."  (Id. at 844).  Velez also

showed the driver his wound.  (Id.).  The driver responded by jumping out of the

passenger side of the van.  (Id.).  After he did so, Velez entered the driver's side of the

van and drove away.  (Id.).  Velez testified that he was "just trying to [take the van] to the

precinct."  (Id. at 845).

        Velez drove the van to 234th Street, where he stopped when he saw the

police.  (Id. at 844-45).  He exited the van and told the police that he had been stabbed

and that he had stabbed the other person while trying to defend himself.  (Id. at 845).

Velez testified that he tried to explain that Diaz was chasing him, but the police did not listen to this aspect of what he said.  (Id.).

On cross-examination, Velez admitted that while Terry was shouting, "Get the gun, get the gun," he could not see Diaz and did not know where he was or whether he had a gun.  (Id. at 874).  He further conceded that Diaz was not pointing a gun at him while he was struggling with Terry.  (Id.).

Expanding on his direct testimony, Velez claimed that Diaz had stepped out of the car displaying "something with a black handle" and that he had told Danias that Diaz had a gun.  (Id. at 881).  He later contradicted this testimony, conceding that he had not told Danias that Diaz had a gun.  (Id. at 882, 884).  Attempting to reconcile the two versions, Velez then testified that by the time he stated that Diaz had a gun, Danias was jumping out of the van.  (Id. at 885).

Although Velez claimed to have told Danias about a gun, he conceded that he had not told the police at 234th Street that Diaz had a gun, stating only, "I got stabbed . . . [and] I stabbed him back."  (Id. at 845).  Velez further conceded that he never mentioned that Diaz had a gun on the way to the hospital or once he was there.  (Id. at 896).

On redirect examination, Velez contended that the reason for his failure to mention the gun to the police at those times or in his subsequent written statement was

that the police had demonstrated an unwillingness to listen to him at the scene of his

arrest.  (See id. at 908).

### 3. Jury Charge and Verdict

The jury was asked to consider seven counts of the indictment, charging:

(a) Attempted Murder in the Second Degree; (b) two counts of Assault in the First

Degree; (c) two counts of Assault in the Second Degree; (d) Robbery in the First Degree;

and (e) Robbery in the Second Degree.  (Id. at 17, 791-93, 806, 1102).  To assist the

jurors in their deliberations regarding these charges, Justice Newman gave them a two-

page verdict sheet which distinguished the counts arising out of the stabbing of Terry

from those arising out of the forcible taking of Danias's van.  (Id. at 1015).  Referring to

the verdict sheet, the Justice explained to the jury that the first page listed the "Terry

crimes," and that the defense of "justification only relates to page one [and had] nothing

to do with page two."  (Id.).

Justice Newman repeated this admonition numerous times during the

substantive portion of the charge.  (See, e.g., id. at 1015, 1017, 1024, 1027, 1030, 1050).

At one point, however, the Justice misspoke, stating that "[j]ustification does apply to all

of the robbery counts."  (Id. at 1053) (emphasis added).  Immediately after this statement

was made, the prosecutor interjected, "Excuse me, Judge.  You said 'robbery.'"  (Id.).

Justice Newman then corrected herself, explaining "No, it's not a defense to the robbery.

It has nothing to do with robbery.  It's . . . totally unrelated."  (Id.).

9

At the conclusion of her instructions, Justice Newman asked whether counsel had any objections or "requests for recharge."  (Id. at 1056).  Both counsel responded that they did not.  (Id.).

On April 11, 2002, after approximately five hours of deliberations, the jury found Velez guilty of Assault in the First Degree in connection with the stabbing of Terry, and Robbery in the Second Degree in connection with the forcible theft of the van. The jury acquitted Velez on the charges of Murder in the Second Degree and Robbery in the First Degree.[3]  (Id. at 1061, 1102-03).

4.      Sentencing

On May 2, 2002, Justice Newman sentenced Velez to terms of ten years on the assault count and five years on the robbery count, to be served consecutively.  (S. 10). In doing so, the Justice rejected the prosecutor's recommendation of a twenty-four year sentence, noting that Velez was not a predicate felon and that his prior record, although "serious," was not extensive.  (Id. at 3, 8-10).

B.      Subsequent Procedural History

Velez was assigned new counsel for his appeal to the Appellate Division, First Department.  That attorney's brief on appeal contended that:  (1) the People had failed to disprove justification beyond a reasonable doubt in connection with the first degree assault charge; (2) the People had failed to prove beyond a reasonable doubt that

---

[3]      The remaining crimes charged in the indictment were lesser included offenses that the jury did not need to reach in light of its verdict.  (See id. at 1052-53).

Velez had an intent to deprive Danias of his vehicle permanently; and (3) Velez's sentence was unduly harsh and excessive.  (<u>See</u> Ex. 1).  Velez filed a supplemental <u>pro</u> <u>se</u> brief in which he also alleged that the trial court had improperly charged the jury that the justification defense applied to the robbery counts.  (<u>See</u> Ex. 2).

On November 25, 2003, the Appellate Division, First Department, unanimously affirmed Velez's conviction.  <u>People v. Velez</u>, 1 A.D.3d 290 (1st Dep't 2003).  The court held that the jury's rejection of Velez's justification defense regarding the assault charge was "based on legally sufficient evidence and was not against the weight of the evidence."  <u>Id.</u>  The court also concluded that, "[a]s to the robbery conviction, the evidence established that [Velez] forcibly took a van . . . and . . . intended to deprive the victim of his van or to appropriate it to himself."  <u>Id.</u> at 291.  The court found further that there was no basis for a reduction of Velez's sentence.  <u>Id.</u>  Finally, the court stated that Velez's remaining contentions, including those set forth in his <u>pro</u> <u>se</u> supplemental brief, were unpreserved, and it declined to review them in the interest of justice.  <u>Id.</u>  The court added that if it were to review those unpreserved claims, it would reject them.  <u>Id.</u>

Thereafter, on February 27, 2004, the New York Court of Appeals summarily denied Velez's application for leave to appeal.  <u>People v. Velez</u>, 1 N.Y.3d 635 (2004).

C.   <u>Habeas Petition</u>

Velez's habeas petition is dated April 6, 2004, and was received by the Pro Se Office of this Court on April 29, 2004.  (<u>See</u> Docket No. 2).  The petition therefore is timely.  In his petition, Velez reasserts each of the claims that he and his counsel raised on direct appeal.  (<u>See</u> <u>id.</u> at 13(a)-13(c)).

III.   <u>Discussion</u>

A.   <u>Velez's Jury Instruction Claim is Procedurally Barred</u>

A federal court is precluded from reviewing a habeas claim if the state court's prior denial of that claim rested on an adequate and independent state ground. <u>E.g.</u>, <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 81 (1971).  A procedural default qualifies as such an adequate and independent state ground, <u>Harris</u>, 489 U.S. at 262, unless the petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice."  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>Glenn v. Bartlett</u>, 98 F.3d 721, 724 (2d Cir. 1996); <u>accord</u> <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 809 (2d Cir. 2000).

When a state court relies on a state procedural bar, the petitioner is barred from seeking habeas relief even though the state court has ruled in the alternative on the merits of his federal claim.  <u>Glenn</u>, 98 F.3d at 724 (quoting <u>Velasquez v. Leonardo</u>, 898 F.2d 7, 9 (2d Cir. 1990)).  In determining whether a claim may be heard, courts "apply a

presumption against finding a state procedural bar and 'ask not what we think the state

court actually might have intended but whether the state court plainly stated its

intention.'" Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) (quoting Jones v.

Stinson, 229 F.3d 112, 118 (2d Cir. 2000)).  However, when the last court to issue a

reasoned decision relies on a state procedural bar, the court will presume that subsequent

decisions rejecting the claim without discussion relied on the bar and did not silently

consider the merits.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

       After discussing Velez's sentencing and weight and sufficiency of the

evidence claims, the Appellate Division expressly held that Velez's remaining claims

were unpreserved and declined to review them in the interest of justice.  Velez, 1 A.D.3d

at 291.  This determination clearly was correct with respect to Velez's justification

instruction claim because Justice Newman asked counsel at the conclusion of her jury

charge whether they had any objections, and none was voiced.  (T. 1056).  Pursuant to

New York's contemporaneous objection rule, an objection must be raised at trial in order

to preserve it for appellate review.  N.Y. Crim. Proc. Law § 470.05(2) (McKinney 1994).

The Appellate Division's finding of procedural default therefore constitutes an adequate

and independent state ground for rejecting his claim.  See Washington v. James, 996 F.2d

1442, 1447-48 (2d Cir. 1993) (federal courts are "reluctant to hear claims procedurally

defaulted in state court . . . out of respect for our dual court system and in deference to the

integrity of the state courts"); Phillips v. Smith, 717 F.2d 44, 48 (2d Cir. 1983)

13

("[E]xplicit state court reliance on a procedural default bars federal habeas review of the forfeited claim absent a showing of cause and prejudice regardless of whether the state court ruled alternatively on the merits of the forfeited claim.").[4]  Accordingly, this Court may not consider Velez's justification instruction claim unless he can show both cause for the default and actual prejudice or that the failure to consider his claim will result in a fundamental miscarriage of justice.  See Coleman, 501 U.S. at 750.  To demonstrate cause, a petitioner must adduce "some objective factor external to the defense" which explains why he did not raise the claim previously.  Murray v. Carrier, 477 U.S. 478, 488 (1986); Gonzalez v. Sullivan, 934 F.2d 419, 422 (2d Cir.1991) (quoting Murray, 477 U.S. at 488).  The circumstances which may constitute cause include:  (1) interference by government officials making compliance impracticable; (2) situations in which the factual or legal basis for a claim was not reasonably available to counsel; and (3) ineffective assistance of counsel.  See Murray, 477 U.S. at 488; Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (quoting Murray, 477 U.S. at 488).  A showing of prejudice requires a petitioner to demonstrate that the failure to raise the claim previously had a substantial injurious effect on his case such that he was denied fundamental fairness.  See Reyes v. New York, No. 99 Civ. 3628 (SAS), 1999 WL 1059961, at *2 (S.D.N.Y. Nov. 22, 1999).

---

[4]      The subsequent order of the Court of Appeals denying leave to appeal without comment after the Appellate Division had expressly based its decision on a state procedural bar does not change this result.  See Torres v. Hanslmaier, No. 94 Civ. 4082 (MGC), 1995 WL 272527, at *4 (S.D.N.Y. May 8, 1995) (citing Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995)).

14

Finally, to establish a fundamental miscarriage of justice, a petitioner must demonstrate that he is "actually innocent." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).

Velez's papers do not make any of the showings necessary to overcome his procedural default. Accordingly, this Court lacks jurisdiction to consider his jury instruction claim.

Although a federal judge reviewing a habeas petition need not address claims which are procedurally barred, there is always the possibility (however remote) that another court might reach a different conclusion concerning the threshold issue of procedural forfeiture. For that reason, I have considered all of Velez's claims on the merits, including his jury charge claim. As shown below, none of his claims warrants habeas relief.

B.    Merits of Velez's Claims

1.    Standard of Review

A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court. Herrera v. Collins, 506 U.S. 390, 401 (1993). Instead, a state prisoner seeking habeas relief under Section 2254 must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petitioner thus has the burden of proving, by a preponderance of the evidence, that his rights have been violated. See Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

15

Section 2254, as amended by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), provides, in part, that:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim –
>
>    (1) resulted in a decision that was <u>contrary to</u>, or
> involved an <u>unreasonable application of</u>, clearly established
> Federal law, as determined by the Supreme Court of the
> United States.

28 U.S.C. § 2254(d)(1) (emphasis added).

As the Second Circuit noted in <u>Jones v. Stinson</u>, 229 F.3d 112, 119 (2d Cir.

2000), the Supreme Court has "construed the amended statute so as to give independent

meaning to 'contrary [to]' and 'unreasonable.'"  "Under the 'contrary to' clause, a federal

habeas court may grant the writ if the state court arrives at a conclusion opposite to that

reached by [the Supreme] Court on a question of law or if the state court decides a case

differently than [the] Court has on a set of materially indistinguishable facts."  <u>Williams</u>

<u>v. Taylor</u>, 529 U.S. 362, 412-13 (2000).  Under the "unreasonable application" clause, a

federal habeas court should "ask whether the state court's application of clearly

established federal law was objectively unreasonable."  <u>Id.</u> at 409.  This standard does not

require that reasonable jurists would all agree that the state court was wrong.  <u>Id.</u>

at 409-10.  Rather, the standard "falls somewhere between 'merely erroneous and

unreasonable to all reasonable jurists.'" Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

Section 2254(d)(2) also authorizes the federal courts to grant a habeas writ when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Finally, to the extent that a habeas petition challenges factual findings, Section 2254(e)(1) provides that: "a determination of a factual issue by a State court shall be presumed to be correct" and "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

"If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." Williams, 529 U.S. at 389.

2.      Sufficiency and Weight of the Evidence

Velez claims that there was insufficient evidence to sustain his conviction on either count and that his conviction on the assault count was against the weight of the evidence. A petitioner's claim that his conviction was contrary to the weight of the evidence is not cognizable on federal habeas review. See Givens v. Burge, No. 02 Civ. 0842 (JSR)(GWG), 2003 WL 1563775, at *10 (S.D.N.Y. Mar. 4, 2003) (collecting

cases).  On the other hand, the sufficiency of the evidence used to convict a defendant is an issue that a habeas court may address.

A habeas petitioner challenging the sufficiency of the evidence bears a "very heavy burden."  Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995) (internal quotation marks omitted).  To prevail, the petitioner must show that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Bossett, 41 F.3d at 830 (quoting Jackson v. Virginia, 443 U.S. 307, 324 (1979)).  Moreover, in considering such a sufficiency claim, a habeas court must weigh the evidence in the light most favorable to the prosecution and draw all permissible inferences in its favor.  Jackson, 443 U.S. at 326. A sufficiency claim therefore does not permit the reviewing court to redetermine the credibility or reliability of witnesses or substitute its view of the evidence for that of the trier of fact.  See Marshall v. Lonberger, 459 U.S. 422, 434 (1983); Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996).  Rather, insofar as there is evidence from which the jury could have drawn an inference favorable to the accused but chose not to, the court must "defer to . . . the jury's choice of the competing inferences."  United States v. Kinney, 211 F.3d 13, 18 (2d Cir. 2000) (quoting United States v. Morrison, 153 F.3d 34, 49 (2d Cir. 1998)).  For this reason, "the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction."  United States v. Danzey, 594 F.2d 905, 916 (2d Cir. 1979); see also  Edwards v. Jones, 720 F.2d 751, 755 (2d Cir. 1983) (following Danzey even though the testimony and character of the sole witness who directly

18

implicated the petitioner were "less than inspiring"); <u>Means v. Barkley</u>, No. 98 Civ. 7603

(DLC), 2000 WL 5020, at *4 (S.D.N.Y. Jan. 4, 2000) (applying <u>Danzey</u> and noting that a

habeas court may set aside conviction only if testimony is "incredible as a matter of

law").

        To convict Velez on the charge of Assault in the First Degree, the People

were required to prove beyond a reasonable doubt that he intended to cause Terry serious

physical injury and did so using a dangerous instrument, or that he caused Terry serious

physical injury by recklessly engaging in conduct that presented a grave risk of death.

<u>See</u> N.Y. Penal Law § 120.10(1), (3); <u>Campbell v. Greene</u>, 440 F. Supp. 2d 125, 136

(N.D.N.Y. 2006) (citing <u>Almonte v. Lape</u>, No. 05 Civ. 1995, 2006 WL 839073, at *9

(S.D.N.Y. Mar. 30, 2006)); <u>see also</u> <u>People v. Dukes</u>, 30 A.D.3d 682, 686 (3d Dep't

2006) (first degree assault would require the jury to find that the defendant intended to

cause serious physical injury with a deadly instrument), <u>rev'd on other grounds</u>, 8 N.Y.3d

952 (2007).  Additionally, to disprove that Velez acted justifiably in self-defense, the

People were required to show that he was the initial aggressor or that he responded with

unreasonable force.  <u>See, e.g.</u>, <u>People v. Acquista</u>, 41 A.D.3d 491, 492 (2d Dep't 2007);

<u>People v. Jones</u>, 151 A.D.2d 997 (4th Dep't 1989).

        Velez contends that the People failed to make either alternative showing.

(Pet. at 13(a)).  At trial, however, Velez conceded that Terry was unarmed and that Diaz

was not pointing a gun at him when he stabbed Terry.  (T. 874).  The evidence further

established that Velez stabbed Terry several times.  (Id. at 425, 438-40, 492-93, 503-06,

558).  As the Appellate Division correctly observed in light of this undisputed evidence,

even if Terry initiated the confrontation on February 23 and was the first to display a

knife, Velez "was not justified in stabbing [him] while he was lying, unarmed, on the

ground."  Velez, 1 A.D.3d at 291 (citing People v. Centeno, 291 A.D.2d 265, 266 (1st

Dep't 2002)); see also N.Y. Penal Law § 35.15(2)(a) ("A person may not use deadly

physical force upon another person [in self-defense] unless [t]he actor reasonably believes

that such other person is using or about to use deadly physical force.").

       To convict Velez of the crime of Robbery in the Second Degree, the People

had to establish, at a minimum, that he forcibly stole Danias's van.  See N.Y. Penal Law

§ 160.10(3); People v. Sterling, 11 A.D.3d 932, 933 (4th Dep't 2004); People v.

Lazarcheck, 176 A.D.2d 691, 692 (1st Dep't 1991).  Velez contends that the People failed

to meet this burden.  (Pet. at 13(a)).  Although the jury's failure to convict Velez of

Robbery in the First Degree may mean that the jury did not credit Danias's testimony that

Velez had threatened him with a knife, Danias also testified that Velez "angrily" told

Danias, "Get the fuck out, motherfucker."  (T. 728).  The evidence also showed that

Velez commandeered the van and drove it in a manner which suggested that he was trying

to elude, rather than contact, the police.  (Id. at 730-31).  Based on this evidence, the jury

reasonably could conclude that Velez had forcefully appropriated Danias's van and was

not merely taking it for a joy ride.

20

Accordingly, there is no basis for either branch of Velez's insufficiency of the evidence claim.

3.     Jury Charge

For a habeas petitioner to prevail on an erroneous jury charge claim, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973). Additionally, in resolving that question, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Id. at 146-47 (citing Boyd v. United States, 271 U.S. 104, 107 (1926)).  The issue is "what a reasonable juror could have understood the charge as meaning." Francis v. Franklin, 471 U.S. 307, 316 (1985).

Here, Justice Newman repeatedly instructed the jury correctly that the justification defense applied only to the attempted murder and assault counts.  Although the Justice misspoke on one occasion and referred to the robbery counts while discussing justification, she immediately corrected herself.  (T. 1053).  There consequently is no reason to believe that the jury mistakenly believed that the justification defense was applicable to the robbery counts.  In any event, the jury was instructed that the People had to prove beyond a reasonable doubt that Velez was not acting in self defense.  (T. 1029).  Consequently, even if the jury erroneously considered justification in connection with the

robbery charge, it simply would have increased the prosecution's burden with respect to that charge, and therefore could not have prejudiced Velez.

In his habeas petition, Velez restricts his jury charge claim to the allegedly erroneous justification instruction.  In his pro se supplemental brief on appeal, however, Velez also advanced the related argument that the trial court's efforts to correct misstatements in its justification instruction and an unrelated supplemental instruction were ineffective because the jury was not told to "disregard the erroneous part of the court's charge."  (Ex. 2 at 8) (emphasis added).  In People v. Lourido, 70 N.Y.2d 428, 434-35 (1987), which Velez cites as support for this claim, the trial court gave a supplemental instruction following the conclusion of its initial charge which corrected an earlier erroneous instruction, but never suggested to the jury that its original instruction was wrong.  Here, by comparison, in both of the instances about which Velez complains, Justice Newman immediately indicated to the jury that her prior statement was wrong.  (See T. 1053 ("No, it's not a defense to the robbery.  It has nothing to do with the robbery."), 1077 ("I am wrong.  Excuse me.  I am sorry.")).  There consequently is no reason to believe that the jurors misunderstood the legal principles they were to apply.  Velez therefore is not entitled to habeas relief simply because Justice Newman failed to use the word "disregard" in correcting her erroneous statements.

22

4.    Sentencing

Velez's final claim is that his fifteen-year sentence was unduly harsh and excessive in light of such mitigating factors as his "youthful age, stable work history, and community ties."  (Pet. at 13(b)).  He also notes further that he was a first time felony offender,[5] and that Terry's injury "was not life threatening."  (Id.).

It is established law that "[n]o federal constitutional issue is presented" when a petitioner's sentence is within the range prescribed by state law.  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).  Here, Velez was convicted of Assault in the First Degree, which carries a sentence of five to twenty-five years, N.Y. Penal Law § 70.02(1)(a), (3)(a), and Robbery in the Second Degree, which carries a sentence of three and one-half to fifteen years, id. § 70.02(1)(b), (3)(b).  Justice Newman's sentences of ten years on the assault charge and five years on the robbery charge therefore were well within – indeed, at the lower end of – the statutory range.  Velez is therefore not entitled to habeas relief on the ground that either sentence was excessive.

Velez also contends that his sentences should have been concurrent, rather than consecutive, because his acts were part of "the same continuing course of events." (Pet. at 13(b)).  Under Section 70.25(2) of the New York Penal Law, sentences must run

---

[5]        This assertion is correct, but somewhat misleading.  By the time of sentencing, Velez had pleaded guilty to an unrelated felony charge of Criminal Possession of a Weapon in the Third Degree.  His sentence in that case was postponed, however, until after he had been sentenced by Justice Newman. (S. 9).  As Justice Newman observed, he therefore was not a predicate felon only because "technically the gun case [was] not a conviction" until he was sentenced on that charge.  (Id. at 10).

23

concurrently if they relate to "two or more offenses committed through a single act or omission."  The New York Court of Appeals has held that this statute permits consecutive sentences "where the crimes are committed through separate and distinct acts, even though part of a single transaction."  People v. Salcedo, 92 N.Y.2d 1019, 1021 (1998).  Here, although Velez's assault of Terry and robbery of Danias both occurred within a narrow time frame, they clearly were separate and distinct acts.  For example, the two crimes were committed in different places and involved two different victims.  His consecutive sentences therefore were proper under New York law.

Moreover, in his Petition, Velez does not challenge the statutes under which he was convicted and sentenced.  See United States ex rel. Annunziato v. Deegan, 440 F.2d 304, 306 (2d Cir. 1971) (consecutive sentences within statutory limit not subject to habeas review when petitioner does not challenge constitutionality of the statutes under which he was convicted and sentenced).  Accordingly, the state court's decision to impose consecutive time raises no constitutional issue.

IV.   Conclusion

For the foregoing reasons, Velez's petition should be denied.  Furthermore, because Velez has not made the substantial showing of the denial of a constitutional right required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not be issued.

V.     Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties are hereby directed that if they have objections to this Report and Recommendation, they must, within ten days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable William H. Pauley and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, N.Y. 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Pauley. The failure to file timely objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140, 147-48 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).

Dated:        New York, New York
              October 19, 2007


                                          _____
                                          FRANK MAAS
                                          United States Magistrate Judge


25

Copies to:

Honorable William H. Pauley
United States District Judge

Joel Velez
DIN No. 02-A-3137
Eastern Correctional Facility
P.O. Box 338
Napanoch, New York 12458-0338

T. Charles Won
Assistant District Attorney
Office of the Bronx County District Attorney
198 East 161st Street
Bronx, New York 10451

26